JOYNES, J.
The first ground taken in the petition is that the 93d section of the assessment act of 1866, on which this case *621 •depends, was not intended by the legislature to apply to express companies incorporated by this State.
I do not think this position can be maintained. The language is general, and without restriction. It purports *to embrace “every express company.” The 14th section of the act imposing taxes passed at the same session, imposes a tax of one per cent, on the gross earnings of “every express company,” to be ascertained and paid in the mode prescribed by the 93d section of the assessment act; section IS imposes a tax on the dividends of ‘ ‘savings bank and insurance companies incorporated by this State’ section 16 imposes a tax on “foreign insurance companies;” section 17 imposes a tax on banks “incorporated by this State.” The 93d section of the assessment act, like the 14th section of the act imposing taxes, applies to “every express company;” the 94th applies to savings banks and insurance companies “incorporated by this State;” and the 95th applies to insurance companies “not incorporated by this State.” Thus it appears that when a distinction was intended between companies incorporated by this State and other companies of like kind, either in respect to the mode of taxation, or in respect to the mode of assessment and collection, the distinction was made in express terms.
The 14th section of the act imposing taxes and the 93d section of the assessment, act, refer to each other, and are parts of the same system. Every express company is taxed by the former, and every such company so taxed is required by the latter to make reports to the Auditor of its gross earnings, and to pay the tax, at the time and in the mode prescribed. Every such company is made liable to a penalty for failure to report its earnings and to pay the tax. And the stockholders of every such company are made personally liable for the tax and for the penalty. We have no more authority for supposing that the Eegislature intended to exempt anj' express company from any one of these provisions, more than from any other one. All were to be taxed, and the taxes of all were to be collected in the same way. We cannot interpolate exceptions ^founded on inference and conjecture, where the intention of the Eegislature is expressed in clear and unambiguous terms.
If the National Express Company was not embraced by the 93d section of the assessment act, I do not see how it could be held to be embraced by the 14th section of the act imposing taxes. If it was not embraced by the latter section, then, if taxed at all, it must have been taxed on its capital under section 58 of the assessment act, as contended in the argument. The result of this would be, to subject an infant enterprise, established under authority of this State, and doing little business, to much more onerous taxation than was imposed on others which had been long established. It would be taxed on its entire capital wherever em- ! ployed, while they would be taxed only on their earnings from business done in this State. If this company was embraced by section 14 of the act imposing taxes, and was not embraced by section 93 of the assessment act, then a tax was imposed, and no means were provided for ascertaining its amount or enforcing its payment.
It has been strongly urged upon us, that to hold that the National Express Company was embraced by the 93d section of the assessment act, would impute to the Eegisla-ture a singular inconstancy of purpose, since it had only two months before granted a character to that company, in which no personal liability was imposed on the stockholders, amending a former charter, by which such a liability was imposed. And it was contended that no good reason can be assigned why such a discrimination should have been made between the stockholders of a domestic express company and those of other domestic corporations.
It is enough to say, in reply to these suggestions, that such was the pleasure of the Eegislature. Stet pro ratione voluntas. At most, these suggestions could only weigh in turning the scale, if the intention was doubtful.
*But I do not see the force of either suggestion. The act incorporating the National Express Company was passed on the 12th December, just one week after the commencement of the session, and no doubt long before the assessment bill had been considered, or even prepared. The policy of holding the stockholders of such companies personally liable for the taxes imposed on them, had, as we were told in the argument, prevailed under an act passed by the Eegislature which sat in Richmond in 1863, and which continued unrepealed to the end of the war; and the Eegislature reserved the right to alter the charter at pleasure. When it came to pass the assessment act, it applied to this express company, and to all others, the policy that had previously prevailed. There was one obvious reason for providing a special security for the taxes of such companies. They do their business by means of railroads and steamboats belonging to others, having very little visible property of their own. The expediency of such a provision seems to be illustrated by the present case.
It was further contended that the imposition of such a personal liability on the stockholders, when the legal effect of the charter was to exempt them from any personal liability for debts of the company, was a violation of the contract between the stockholders and the State.
By the last clause of the charter, it was made subject to modification or repeal, at the pleasure of the General Assembly. Sess. Acts 1865-6, p. 381. The stockholders, by accepting the charter, assented to that reservation as a constituent part of their contract. Crease v. Babcock, 23 Pick. R. 334; Durfee v. Old Colony and Fall River R. R. Co., 5 Allen’s R. 230. And it has been expressly held, that the Eegislature *622 may, by virtue of such a reservation, provide by a subsequent statute, that stockholders shall be personally liable for all debts of the corporation *incurred after its passage. Stanley v. Stanley, 26 Maine R. 191; Sherman v. Smith, 1 Black’s U. S. R. S87. Stockholders who become such, or continue to be such, after such a liabilitj' has been imposed, must be understood as agreeing to incur it. In this case, the act imposing the personal liability was passed on the ISth day of February, 1866, and the first payment of taxes for which the plaintiff in error was held liable, became due on the ISth day of March, 1866. In the case in 26 Maine, the objection was taken, as it was in this case, that the reserved power of amendment must be exercised by a special act-for that purpose, and that the liability of the stockholders could not be altered by a general law; but it did not prevail. In the case in 1 Black, the personal liability was imposed by the constitution of the State, and by a general law applicable to all banks.
I do not think that the provision in question is obnoxious to the objection, that it virtually amends the act incorporating the National Express Company, and violates the provision on the-subject of amendments contained in section 16, article IV, of the constitution. That section is as follows: “No law shall embrace more than one object, which shall be expressed in its title; nor shall any law be revived or amended by reference to its title; but the act revived or the section amended shall be re-enacted and published at length. ’ ’ In this case, no section or provision of the act of incorporation was amended. A new provision was made, imposing a liability, as to which that act was silent. The new provision operated to overrule the legal effect of the former law, but it changed none of its terms; it did not “amend” it in the sense of this provision of the constitution. A subsequent statute may be inconsistent with part of a former statute, and so operate as a repeal of that part by implication; or it may not be wholly inconsistent with any part of the former law, so as *to repeal it, but it may operate to modify the construction and effect of the former law. In all such cases, the subsequent law has the effect of an amendment of the former law, but such cases are not affected by this provision of the constitution.
It was contended, that the personal liability attached to such only as were stockholders at the time the liability of the company was incurred; and that there is no evidence to show that the plaintiff in error was a stockholder when the taxes for which he was held liable were incurred, or when they became payable. And it was insisted, that for this defect of proof, there should have been a final judgment for the defendant, on the authority of Webb v. McNeil, 3 Munf. 184; Brown v. Ferguson, 4 Leigh 37; and Watson v. Robertson, Ib. 236.
The ninety-third section does not define what stockholders are to be held liable. On the one hand it may be said, that the effect of the law is to treat the members of the company, pro hac vice, as partners, so that only those should be held liable who were stockholders when the taxes were incurred or became payable. On the other hand, it may be said, that such a construction would lead to great inconvenience and injustice, by holding a stockholder responsible after he has parted with his stock, and consequently with all power to have the debts paid or to protect himself by his influence in the management of the company; that purchasers of stock should be held to take it cum onere, and that the language of the statute is satisfied by holding those liable who are stockholders when the proceedings are commenced. Such provisions have given rise to much conflict of opinion in other States. Angelí & Ames on Corp. sec. 616, and cases cited. It is not necessary, however, to decide in this case what particular class of stockholders are liable under the act in question. The letter of the plaintiff in error admitted *that he was a stockholder, and alleged that he had paid all the requisitions that had been made upon him, so that he had probably been such for a considerable period. When he became a stockholder, and when he ceased to be such, were matters which lay peculiarly within his own knowledge as to which the means of proof were open to him, while they were not equally open to the Commonwealth. If the plaintiff intended to dispute his liability for any part of the taxes, on the ground that he was not a stockholder at the time they were incurred or became payable, he ought to have proved that fact. Having failed to do so, we are authorized to hold that he was a stockholder throughout the whole period for which the taxes were due.
It was also contended that the proof of the Commonwealth was defective, because it did not show that the taxes demanded of the plaintiff in error had not been paid by the Company. Authorities were cited to show, that where a duty is enjoined under a penalty, it will be presumed, in the absence of all evidence, that it has been performed, and that a party who claims a right founded upon an omission to perform such duty, must overcome this legal presumption by proving that the duty has not been performed, although this involves the proof of a negative. The doctrine and authorities on this subject may be found in 1 Starkie Evid. 588-590, ed. of 1860.
This objection proceeds upon an assumption that the ninety-third does not make the stockholders liable primarily and equally 'with the Company for the payment of the taxes due from the Company. If it does make them so liable, it puts them on the footing of debtors, not of mere guarantors, and it was only necessary for the Commonwealth, in this proceeding, to prove the amount of tax with which the Company was chargeable. For that proof, without more, established a liability on the plain *623 tiff in *error as a stockholder for the payment of that amount, and it was incumbent on him to discharge himself from that liability by proof. 1 Starkie Evid. 589.
The ninety-third section does not, in terms, declare whether the stockholders are to be liable primarily and equally with the Company, or whether their liability is to be merely secondary. I am inclined to think that it was the intention of the Legislature to make them liable primarily and equally with the Company, and my brethren entertain no doubt upon this point. Harger v. McCullough, 2 Denio R. 119. It is not important, however, to decide this question. Eor we are all of opinion that it may fairly be inferred from the evidence of the witness Poitiaux, that the taxes had not been paid by the Company. There was, therefore, no such defect of proof as the argument I have been considering assumes.
I think that the judgment is right, and ought to be affirmed.
The other judges concurred in the opinion of Joynes, J.
Judgment affirmed.